NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| PETER DREES, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 10-5430 |
| | : | |
| THE HARTFORD FINANCIAL SERVICES | : | |
| GROUP, INC., CATALYST 360, | : | |
| CONFIDENTIAL RESEARCH | : | |
| ASSOCIATES, INC., LAWRENCE LIEF, | : | |
| AMANDA DAY, STEPHEN D. HOLLAND, | : | |
| RENEE KUWAHARA, MARTI OSSIAS, | : | |
| and JOHN and JANE DOES 1-10 (fictitious | : | |
| names of persons who participated in the | : | |
| illegal activities described in the complaint), | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

Defendants Confidential Research Associates, Inc. and Lawrence Lief (collectively, "CRA") move for summary judgment. Plaintiff Peter Drees opposes, and cross-moves for reconsideration of this Court's June 2, 2011 Opinion and Order. Under Federal Rule of Civil Procedure 78, the Court grants the motion for summary judgment without oral argument, and denies Drees' cross-motion for reconsideration.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Employment Offer*

Plaintiff Peter Drees interviewed for, and was offered employment with Catalyst 360, a subsidiary of The Hartford Financial Services Group, Inc. (collectively, "Hartford"), by letter dated February 10, 2010. Declaration of Peter Drees in Opposition to Defs' Mot. for Summary

**NOT FOR PUBLICATION**

Judgment ("Drees Decl."), ¶¶ 1-2; Defs' Mot. for Summary Judgment ("SJ Motion"), ¶ 1. The February 2, 2010 employment offer was signed by Amanda Day of Hartford's Executive Recruitment Department. Certification of Joseph A. DeFuria In Support of Defs' Motion for Summary Judgment ("DeFuria Cert."), Ex. A; Drees Decl., ¶ 5. This offer was contingent upon a satisfactory background investigation and reference checks. *Id.*; Drees Decl., ¶ 6; SJ Motion, ¶ 2. Drees accepted Hartford's offer. Drees Decl., ¶ 3.

On February 15, 2010, Drees filled out an employment application for Hartford. SJ Motion, ¶ 7; DeFuria Cert., Ex. E. The application also contained an authorization to conduct a background investigation, which Drees also signed on February 15, 2010. DeFuria Cert., Ex. E. Hartford also provided Drees with a document entitled "Background Investigation Notice and Fair Credit Reporting Act Disclosure" ("Notice") which stated that if Hartford relied on a "consumer report" when making an employment-related decision that directly and adversely affected the applicant, it had to provide the applicant with a copy of the report and a written description of the applicant's rights under the Fair Credit Reporting Act ("FCRA") before the decision was finalized. *Id.* If the applicant disagreed with the accuracy of the information in the report and notified Hartford within five days of receipt, a final decision regarding employment would not be made until the applicant had a "reasonable opportunity" to address the report. *Id.*

> The third page of the Notice also stated:
>
> You **are not** required to disclose the following criminal matters:
> - Arrests and charges that did not result in a conviction, unless they involved dishonesty, breach of trust or money laundering and resulted in your participation in a pre-trial diversion program or other similar judicial program . . . .
> - Arrests, charges or convictions classified as a "violation" or "offense" . . . .
> - Arrests, charges or convictions if annulled, erased . . . , dismissed, sealed or expunged or for which you have been acquitted or pardoned

*Id.*

2

**NOT FOR PUBLICATION**

*Background Check*

      Hartford subsequently retained Confidential Research Associates to conduct a background check on Drees. Drees Decl., ¶ 10; SJ Motion, ¶ 3; DeFuria Cert., Ex. B. CRA provided Hartford with a criminal history report ("CIB Report") for Drees obtained directly from the Wisconsin Department of Justice Crime Information Bureau. Drees Decl., ¶ 13; SJ Motion, ¶ 4; DeFuria Cert., Ex. C. The CIB Report indicated that Drees was arrested for retail theft on August 21, 1986 by the Madison Police Department, but that prosecution was deferred. De Furia Cert., Ex. C at 3. According to the Madison Police report, the arrest stemmed from an incident where Drees was observed leaving a restaurant with a glass beer mug without paying or permission. *Id.*, Ex. D. CRA sent the CIB Report to Hartford on February 18, 2010. *Id.*, Ex. C.

      The Report begins with the following preface:

> THE RESPONSE IS BASED ON A SEARCH USING IDENTIFICATION DATA SUPPLIED. SEARCHES BASED SOLELY ON NAME AND NON-UNIQUE IDENTIFIERS ARE NOT FULLY RELIABLE. THE CIB CANNOT GUARANTEE THAT THE INFORMATION FURNISHED PERTAINS TO THE INDIVIDUAL YOU ARE INTERESTED IN.
>
> SUBJECT TO 111.33 TO 111.36, SECTION 111.321 OF THE WISCONSIN STATUES PROHIBTS ACTS OF EMPLOYMENT DISCRIMINATION BASED ON ARREST AND CONVICTION RECORDS. APPLICANTS SHOULD BE NOTIFIED OF THEIR RIGHT TO CHALLENGE THE ACCURACY AND COMPLETENESS OF ANY INFORMATION CONTAINED IN A CRIMINAL RECORD BEFORE ANY FINAL DETERMINATION IS MADE. CHALLENGES SHOULD BE SUBMITTED TO THE CRIME INFORMATION BUREAU ON FORM DJ-LE-247 AND MAY INCLUDE A REQUEST FOR FINGERPRINT COMPARISON.
>
> THIS RESPONSE MAY NOT SHOW ALL ARRESTS FOR THIS INDIVIDUAL HOWEVER ALL INFORMATION PROVIDED TO THE STATE REPOSITORY IS INCLUDED IN THIS RESPONSE.

*Id.*, Ex. C at 1-2.

      Drees did not include any mention of the 1986 arrest in his Hartford employment application, but does not dispute that he was arrested. DeFuria Cert., Ex. E. Day emailed a copy

3

**NOT FOR PUBLICATION**

of the CIB Report to Drees on February 22, 2010, along with a Pre-Adverse Action Notice and Summary of Rights under the FCRA. *Id.*, Ex. F; Drees Decl., ¶ 19; SJ Motion, ¶ 9.

Thereafter, Drees contacted CRA to discuss the CIB Report. DeFuria Cert., Ex. G. The memorandum to file was dated February 21, but given that both parties agree that Drees was not provided with a copy of the CIB Report until February 22, it appears likely that the conversation occurred after February 21. Lief's memorandum reads:

> 2/21 DREES CALLED DISPUTING THE REPORT SENT TO THE HARTFORD 2/18.
> STATED HE HAD THIS PROBLEM ONCE BEFORE.
> HE ADVISED THAT AS FAR AS HE KNEW THERE WAS NO TRIAL, HEARING OR CONVICTION.
> TOLD HIM WE COULD NOT GET THE RECORD CHANGED.
> THAT HE SHOULD CONTACT THE DANE WI COUNTY COURT CLERK'S OFFICE TO CORRECT THE RECORD.
> HE STATED HE WOULD DO SO.
> I ADVISED HIM THAT WHEN HE FELT THE RECORD HAD BEEN CORRECTED HE SHOULD CALL ME SO I COULD DRAW A CORRECTEDCREDPORT *[SIC]* FOR THE HARTFOTRD. *[SIC]*

*Id.* Drees disputes the accuracy of the memorandum, stating that it was not an accurate description of what he said in the phone call. Drees Decl., ¶ 20.

On February 22, 2010, Drees emailed Day and indicated that he had "contacted both CRA and the Wisconsin County Clerk, both of which suggested that the record may not have been properly expunged in 1986. I have place *[sic]* an urgent request with the WI county clerk to research the matter – unfortunately he is out today. I will diligently follow-up on this." DeFuria Cert., Ex. H; Drees Decl., ¶ 21. On February 23, 2010, Drees emailed Day again, stating that "[u]nder the advice of CRA I contacted the Wisconsin's Dane County Clerk office to quickly expedite the records search." DeFuria Cert., Ex. I; Drees Decl., ¶ 24. Drees also wrote:

> I do want to reiterate that in no uncertain terms did I try to mislead you, omit, or deliberately fail to disclose any relevant information. To the best of my knowledge I should NOT have a record and I was never charged or convicted of a criminal matter. The country clerk explained to me that I cannot expunge a record that does not exist . . . .

**NOT FOR PUBLICATION**

*Id.*

Drees obtained a memorandum, dated February 23, 2010, from Wayne Phister, Jr., of the Dane County Clerk of the Circuit Court, stating that he found "no record of a retail theft for Mr. Drees for the charge date and disposition date as listed in 1986." Drees Decl., ¶ 25 & Ex. D. Drees alleges that he immediately supplied this report to Hartford. *Id.*, ¶25.

On February 24, 2010, Drees emailed Day expressing his concern about the CIB Report and the letter being sent from Hartford. *Id.*, ¶ 26 & Ex. F. Day then emailed Drees, stating that their decision was final, and "[a]t this time we are not willing to consider a consulting role. The formal letter will be processed today and mailed overnight to your home address." *Id.*

On February 25, 2010, Hartford, through its Employee Relations Specialist Marti Ossias, sent correspondence to Drees advising that he was not being given any further consideration for employment, and that "action was based in part on information contained in a consumer report." DeFuria Cert., Ex. J.

In a letter dated February 25, 2010, the State of Wisconsin Department of Justice, Criminal History Specialist, Ruth A. Bjork, wrote: "Under statute number 165.84(1), arrest records are eligible for expungement when there is no prosecution (as in your case) or dismissed . . . ." Drees Decl., ¶ 28 & Ex. G. Similarly, in another letter dated February 25, 2010, and signed by Timothy R. Verhoff, Deputy District Attorney, the Dane County District Attorney wrote: "I am unable to locate any record for a Peter Thomas Drees . . . . The lack of a record in this office suggests that you may have been arrested for some type of criminal offense; however, this office never filed any criminal charges . . . . It appears the decision not to file a criminal charge was not forwarded to the Crime Information Bureau." *Id.*, ¶ 27 & Ex. F.

**NOT FOR PUBLICATION**

> Also on February 25, 2010, Drees sent another email to Day, stating:
>
> As a follow-up – I was able to get the matter resolved – this is a very large err *[sic]*. I have NEVER had accusations, convictions or any sort of charges associated with a criminal conviction including those involving dishonesty – EVER. I have never had any sort of charges; deferred, dismissed, filed, negotiated settlement or was compelled to participate in any judicial program in any sort of criminal matter – EVER.

DeFuria Cert., Ex. K; SJ Motion, ¶ 14; Drees Decl., ¶ 29. Drees alleges that the letters from Ruth Bjork, Wayne Phister, Jr., and Timothy R. Verhoff were attached to this email. Drees Decl., ¶ 29. Day replied on February 26, 2010 that she would "share the additional information with the background group." *Id.*, ¶ 30 & Ex. H. CRA also re-ran the CIB Report on February 26, 2010, and sent a copy Hartford that same day. DeFuria Cert., Ex. L. The February 26, 2010 version still included Drees' arrest for retail theft, but showed the status of prosecution as "dismissed." *Id.*

> On March 1, 2010, Day emailed Drees, stating:
>
> During our conversation last week, you told me that you had participated in a deferred adjudication/pre-trial diversion program related to your theft of a glass from a bar/restaurant in 1986. At the time, you further indicated that this arrest had come up in a prior background check with a potential employer. Yet, from your email below, you appear to state that you have never been arrested or charged for theft, let alone participated in such a program. While we understand that you believe that the local police department records do not accurately reflect the current status of this arrest and charge, you have already acknowledged its existence to the company and your participation in such a program.
>
> In order to ensure that we have all of the facts, we would appreciate if you could state (1) whether you were arrested for theft and (2) whether, as a result of the arrest, you were ordered to participate in a pre-trial diversion or deferred adjudication program. (If your participation was successful, such an outcome would cause the court to dismiss the arrest or charge or not enter a conviction on your criminal record. *[sic]*

DeFuria Cert., Ex. M. While the parties agree that this is a true copy of the March 1, 2010 email, Drees alleges that the "content of the conversation . . . was contrived and false." Drees Decl., ¶ 33. Drees sent the following response to Day that same day: "The record has been corrected. I have answered all questions with honesty and integrity. I believe that the matter is satisfactorily

6

resolved. I am able to put this matter behind us and move forward. I expect The Hartford to have the integrity to do the same." *Id.*, Ex. N.

A copy of the CIB Report re-run on March 2, 2010 showed the status of prosecution as "dismissed." *Id.*, Ex. I at 3. A CIB Report run on April 5, 2010 stated "[n]o criminal history found." *Id.*, Ex. J.

On March 2, 2010, Day, via email, advised Drees that "[b]ased on the information that you've shared with me, we have decided to revoke the offer of employment with The Hartford. We understand that you already received correspondence from The Hartford dated February 25, 2010 regarding its use of a consumer report . . . to make this final decision." *Id.*, Ex. N.

On March 22, 2010, Drees wrote to Hartford to address what he called "an error and/or inconsistency" in their procedures. *Id.*, Ex. P. He argued that his prior arrest should have been reported by CRA as "dismissed," and threatened to file suit if his employment offer was not reinstated. *Id.* On April 20, 2010, Catalyst 360 Vice President Stephen Holland sent Drees a letter, stating that they were not prepared to reinstate the employment offer. *Id.*, Ex. Q. Holland also wrote that "by e-mail dated March 1, 2010, we asked you a series of very specific questions to which you responded that you considered 'the matter satisfactorily resolved' and failed to provide any further information." *Id.* "While the information that you produced in your March 22, 2010 letter now indicates that the theft charge from 1986 has been 'dismissed,' the information upon which we relied at the time we made the decision to revoke the offer indicated otherwise." *Id.*

*Litigation*

On September 9, 2010, Drees filed suit against Hartford, Confidential Research Associates and Lawrence Lief in the Superior Court of New Jersey, Bergen County, alleging

7

**NOT FOR PUBLICATION**

multiple violations of the FCRA and other claims. The case was removed to this Court. ECF No. 1. In December 2010, Hartford and CRA both filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 2, 7. On June 9, 2011, this Court granted Hartford's Motion to Dismiss in its entirety, and granted CRA's motion to dismiss as to a majority of the counts. ECF No. 16. Specifically, the Court dismissed Counts 1, 2, part of Count 3, all of Counts 4 through 8, and Counts 11 and 12. Only the allegations that CRA violated Section 168li of the FCRA contained in Count 3 and Counts 9 and 10 alleging tortious interference with contract and prospective economic advantage against CRA remained.

On January 1, 2013, Lief and CRA moved for summary judgment on the remaining counts. ECF No. 37. On February 5, 2013, Drees opposed and cross-moved for reconsideration of the Court's June 9, 2011 Order. ECF No. 40.

**STANDARD OF REVIEW**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute as to a material fact is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.* The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). If the movant carries this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

**NOT FOR PUBLICATION**

586-87 (1986)). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## DISCUSSION

*Motion for Reconsideration*

In opposition to Defendants' motion for summary judgment, Plaintiff Drees filed a cross-motion for reconsideration of this Court's June 9, 2011 Opinion and Order. Plaintiff seeks to have this Court reconsider its previous ruling that the CIB Report was not a consumer report.

Local Civil Rule 7.1(i) allows a party to seek a motion for reconsideration within 14 days after entry of the judgment, and directs the party seeking reconsideration to submit "a brief setting forth the matter or controlling decisions which the party believes the Judge . . . has overlooked." A motion for reconsideration must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct a clear error of law or prevent manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

This motion for reconsideration is, without a doubt, untimely. Local Civil Rule 7.1(i) allows a party to seek reconsideration within 14 days after entry of judgment. This motion was filed almost **two years** after the entry of the judgment on June 9, 2011. Plaintiff did not seek leave of this Court to file a delayed motion for reconsideration, nor was any reason given for this extreme tardiness. *See XL Specialty Ins. Co. v. Westmoreland Coal Co.*, 2006 U.S. Dist. LEXIS 54233, *4 (D.N.J. Aug. 4, 2006) ("Defendant failed to offer an explanation regarding why they

9

**NOT FOR PUBLICATION**

failed to file their motion in a timely fashion . . . [t]his alone is sufficient to deny Defendant's motion"). It follows that this motion is denied on the basis of untimeliness, and this Court will not reconsider its earlier finding that the CIB Report was not a consumer report for the purposes of the FCRA, or reinstate Counts I and II of the Complaint.

*FCRA Claim*

Count 3 of the Complaint originally alleged violations of both Sections 1681i and 1681e of the FCRA. This Court has dismissed the alleged violation of Section 1681e, ruling that the CIB Report was not a "consumer report" for purposes of the FCRA because it fell under the exception in 15 U.S.C. § 1681a(x), and CRA was not subject to the requirements of Section 1681e. June 9, 2011 Opinion and Order at 10-11.

Section 1681i provides that if a consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency," the agency is required to "conduct a reasonable investigation to determine whether the dispute information is inaccurate and record the current status of the disputed information." 15 U.S.C. § 1681i(a)(1)(A).

CRA contends it is a "reseller" under the FCRA. SJ Motion at 17-19. A reseller is not subject to the same investigation requirements as a consumer reporting agency. 15 U.S.C. § 1681i(f). A reseller is defined as a

> consumer reporting agency that (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u). Also, CRA argues that since the CIB Report at issue is not a "consumer report" for purposes of the FCRA, it is not subject to any reinvestigation requirements under the

**NOT FOR PUBLICATION**

FCRA concerning information contained in any consumer report. SJ Motion at 16. Even if Section 168li applies, and CRA is not found to be a reseller, CRA argues that Drees did not satisfy its notice requirement. *Id.* at 16.

Drees maintains that there is no evidence submitted that would allow this Court to conclusively label the CRA a reseller. Opp. at 34-35. Even if the CRA was deemed a reseller, Plaintiff argues that resellers still have a duty to investigate upon receiving notice of a dispute under Section 1681a(f)(2). *Id.* at 36. Finally, Drees also contends that, assuming CRA is not a reseller, there is a genuine issue of material fact as to whether Drees satisfied the notice requirements of Section 1681i. *Id.* at 33.

Section 1681a(u) defines a reseller as:

A consumer reporting agency that (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u). In support of its argument, CRA submits the certification of Lawrence Lief, sole shareholder of CRA. SJ motion, Certification of Lawrence Lief, ¶ 2. Lief states: "CRA did not create this report on Peter Drees, as CRA does not maintain its own database for Wisconsin criminal records. CRA accessed the existing database of the State of Wisconsin Department of Justice and obtained the report directly from that database, which was then transmitted to The Hartford without any editing or changes being made by CRA." *Id.* ¶ 7.

Plaintiff maintains that under Section 1681a(u), CRA cannot be a reseller since the Wisconsin Department of Justice would have to be a consumer reporting agency for CRA to fit the definition of a reseller ("assembles and merges information contained in the database of **another consumer reporting agency or multiple consumer reporting agencies**" (15 U.S.C. §

**NOT FOR PUBLICATION**

1681a(u) (emphasis added)). Opp. at 34. Drees also refers to the Federal Trade Commission ("FTC") Commentary interpreting the FCRA in support of his arguments. Opp. at 35. But on July 26, 2011, the FTC rescinded 16 C.F.R. 600.1, 600.2, and the Appendix to Part 600 – the very Commentary that Plaintiff was relying on.[1] In light of this rescission, the Court declines to consider the Commentary's discussion of the term "consumer report."

A June 9, 1998 letter from the FTC Staff expressed the opinion that a company in the business of providing public criminal records information to its customers is likely a consumer reporting agency under the FCRA, and not a reseller. *See* FTC Staff Opinion Letter to Mr. Richard LeBlanc, June 9, 1998, http://www.ftc.gov/os/statutes/fcra/leblanc.shtm. But the company in question sent agents to local courthouses to find and compile relevant information – an act which the letter considered actively "assembling" and "evaluating" information. *Id.* An entity needs to meet four factors in order to be deemed a consumer reporting agency under the FCRA, one factor of which is that it "regularly" "assembles" or "evaluates" information on consumers. 15 U.S.C. § 1681a(f) ("The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information . . . ."). Courts have observed that the "assembling" or "evaluating" requirement "implies a function which involves more than receipt and retransmission of information . . . [t]he Act is not directed to those who supply information . . . [to] consumer reporting agencies, nor to those who are remote from those decisionmakers who rely upon consumer reports in making credit and other decisions." *Smith v. First National Bank of Atlanta*, 837 F.2d 1575 (11th Cir. 1988) (internal citations omitted). *See also Lewis v. Ohio Professional Elec. Network, LLC*, 190

---

[1] Rescission notice available at https://www.federalregister.gov/articles/2011/07/26/2011-18688/statement-of-general-policy-or-interpretation-commentary-on-the-fair-credit-reporting-act.

**NOT FOR PUBLICATION**

F. Supp. 2d 1049, 1056 (S.D. Ohio 2002); *Poore v. Sterling Testing Systems, Inc.*, 410 F. Supp. 2d 557, 569 (E.D. Ky. 2006) ("Thus, it appears that a reseller is an entity that purchases and resells consumer reports but does not itself create any consumer information contained in the reports.").

This Court finds that it is undisputed that CRA did not actively assemble or evaluate the information it received from the Wisconsin Department of Justice Crime Information Bureau, or create any consumer information. It follows that CRA fails to meet the definition of a "consumer reporting agency" under the FCRA. The only two options to categorize companies under the FCRA are reseller and consumer reporting agency, and CRA is closer to a reseller, especially since CRA itself does not maintain any database of information, and pulled the report directly from the Wisconsin Crime Information Bureau, without performing any edits. *See Poore*, 410 F. Supp. at 568. Because CRA is a reseller, not a consumer reporting agency, it is not subject to the notice requirements of Section 1681i with regard to the CIB Report provided to Hartford.

Section 1681i(f) only concerns resellers, and requires action if a "reseller receives notice from a consumer of a dispute concerning the completeness or accuracy of any item of information contained in a **consumer report** on such consumer produced by the reseller, the reseller shall, within 5 business day so receiving the notice, and free of charge – (A) determine whether the item of information is incomplete or inaccurate **as a result of an act or omission of the reseller**." 15 U.S.C. § 1681i(f) (emphasis added). This Court has previously found that the CIB Report is not a consumer report, and regardless, any inaccuracy was not the "result of an act or omission of the reseller" since CRA received the Report directly from the Wisconsin Crime Information Bureau. The FCRA does not impose any obligation upon resellers to investigate

**NOT FOR PUBLICATION**

public information records transmitted to prospective employers. Count 3 of the Complaint is now dismissed in its entirety.

*Tortious Interference Claims*

Under New Jersey law, an action for tortious interference requires: (1) a protectable right (a prospective economic or contractual relationship); (2) interference done intentionally and with malice; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) damage from the interference. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751 (1989). In addition, a cause of action for tortious interference can only be directed against defendants who are not parties to the relationship. *Id.* at 752.

Defendants argue that Counts 9 and 10 of Plaintiff's Complaint for tortious interference with contract and prospective economic advantage must be dismissed since there is insufficient evidence to establish malice and a reasonable likelihood that Defendants' interference caused the loss. SJ Motion at 10-15. CRA contends that the background check was factually accurate at the time it was obtained from the Wisconsin Department of Justice, and CRA was "merely performing a criminal background check on behalf of a prospective employee of The Hartford as it had done on countless occasions in its long-standing relationship with The Hartford." *Id.* at 10. Defendant further argues that the element of malice in tortious interference cases always involves intentional conduct. *Id.* at 11.

Drees responds that CRA's act of providing the CIB Report with "patently false information was intentional" and "substantially certain to interfere" with his employment prospects. Opp. at 17. In addition, Drees argues that but for CRA's CIB Report, Hartford would not have revoked its job offer. *Id.* at 21.

**NOT FOR PUBLICATION**

This Court finds that the tortious interference claims against the CRA Defendants must fail as a matter of law due to lack of any evidence even remotely suggesting that CRA's alleged interference was done intentionally and with malice. For the purposes of this tort, "[t]he term malice is not used in the literal sense requiring ill will toward the plaintiff . . . . Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown*, 116 N.J. at 751 (citations omitted). CRA was performing a routine background check on behalf of Hartford, and the record is devoid of any facts to suggest that CRA acted with malice towards Drees when they provided Hartford with the CIB Report. At best, Drees is alleging a lack of diligence by CRA that does not rise to the level of malice. It is undisputed that CRA did not have any knowledge that the information contained in the CIB Report was incorrect, nor did CRA play any role in compiling or editing the Report. Reply at 9. That the CIB Report likely contained erroneous information is insufficient to establish the necessary level of intent.

Plaintiffs respond that interference becomes intentional if the defendant "desire to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." Opp. at 17 (citing *Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003) (citation omitted)). Again, there is no evidence in the record to suggest that CRA desired to bring about the revocation of Drees' job offer, or had any knowledge that it was certain, or substantially certain, to occur as a result of its provision of the CIB Report to Hartford. Nor are there any facts in the record to suggest that CRA's conduct was "fraudulent, dishonest, or illegal," *Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 307 (2001) (citing *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 205 (App. Div. 1995)), despite Plaintiff's claim that CRA might not have followed "industry standards." Opp. at 20. A possible

**NOT FOR PUBLICATION**

failure to follow industry standards does not rise to the level of action necessary to establish tortious interference.

## CONCLUSION

Defendants' motion for summary judgment is granted, and the remaining allegations in Count 3 and Counts 9 and 10 alleging tortious interference with contract and prospective economic advantage against CRA are dismissed.

April 23, 2013

**/s/ William H. Walls**
United States Senior District Judge
